**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **WALTER M. NICHOLS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.  08-0616-KD-M** |
| | ) | |
| **SECURITY ENGINEERS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>ORDER</u>**

This employment discrimination action is now before the Court on defendant Security

Engineers, Inc.'s motion for summary judgment, plaintiff Walter M. Nichols response, the reply,

and the parties' supporting evidentiary submissions (docs. 37-39, 41-44).  Upon consideration of

the foregoing and for the reasons set forth herein, the motion for summary judgment is

**GRANTED**.

I. <u>Background</u>

    A. <u>Complaint</u>

Plaintiff Walter N. Nichols (Mr. Nichols) filed his complaint on October 20, 2008,

wherein he alleges that Security Engineers, Inc. (SEI) discriminated against him on basis of sex

and race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*, as

amended by the Civil Rights Act of 1991.  Mr. Nichols, a white male, alleges that his supervisor,

a black male, received a complaint regarding a black female security officer and in response,

moved Mr. Nichols to her position and moved the black female to Mr. Nichols' position.  Mr.

Nichols alleges that this exchange of position caused him to have to pay for parking which

previously had been free and deprived him of a raise.  Mr. Nichols alleges that he complained to

his supervisor about the change in position.  Mr. Nichols also alleges that he was terminated on false grounds, i.e., that he failed to contact his immediate supervisor, a black female, and advise her of an upcoming absence from work.  Mr. Nichols alleges that blacks or females are treated differently than white males citing to the fact that the black female security officer was transferred when she violated company policy but when he violated company policy his employment was terminated.

B. Factual Background[1]

1.[2] Mr. Nichols first worked for SEI as a security officer in 2004 and was assigned to work at Regions Bank's branch in downtown Mobile, Alabama. (Deposition of Walter Nichols ("Nichols Depo.") filed as Exhibit 1, at pp. 43:4-46:18, 106:16-107:6) (doc. 39-2).

2. After working for SEI for approximately five months, Mr. Nichols resigned on November 6, 2004. (Nichols Depo. at pp. 47:8-49:11).

3. On March 2, 2007, Mr. Nichols applied for re-employment with SEI as a security officer. (Nichols Depo. at p. 96:8-16; Application for Employment, filed as Exhibit 2).

4. At that time, Charlie Hill ("Mr. Hill"), who is African-American, was the operations manager for SEI in Mobile and the surrounding area. (Deposition of Charlie Hill ("Hill Depo."),

---

[1] When resolving a motion for summary judgment, the Court construes the evidence and the factual allegations in a light most favorable to the plaintiff.  Miller v. King, 384 F.3d 1248, 1258-59 (11th Cir. 2004) citing Burton v. City of Belle Glade, 178 F. 3d 1175, 1187 (11th Cir. 1999) (When ruling on a motion for summary judgment, the court "must view all evidence and all factual inferences therefrom in the light most favorable to the non-moving party.")

[2] Mr. Nichols incorporated by reference into his response, the facts from SEI's memorandum in paragraphs 1 through 7, 24 through 33, 35, 36, 39, 41, 47 and 48.(docs. 38, 41). Because these facts are not in dispute, they are set forth without alteration in paragraphs 1 through 23.

filed as Exhibit 3, at pp. 22:5-24:18).

5. As operations manager, Mr. Hill was responsible for hiring and firing security officers. (Hill Depo. at p. 22:18-22).

6. Mr. Hill interviewed Mr. Nichols and made the decision to re-hire him. (Nichols Depo. at p. 106:4-12; Hill Depo. at p. 81:12-14).

7. SEI initially assigned Mr. Nichols to work at the Regions branch in Prichard, Alabama ("Regions Prichard") and at the Regions branch in downtown Mobile ("Regions Mobile") as needed. (Nichols Depo. at pp. 106:16-p. 107:6).

8. Sometime after March 2007, Mr. Hill reassigned Mr. Nichols to Regions Mobile during the workweek. (Nichols Depo. at pp. 119:23-122:1).

9. Mr. Hill reassigned Mr. Nichols to Regions Mobile because the branch manager at Regions Mobile complained to Mr. Hill that another security officer, Julia Evans ("Ms. Evans")(African-American female), was talking on her mobile phone while at work. (Hill Depo. at pp. 32:5-33:22).

10. Because Regions Mobile complained to Mr. Hill about Ms. Evans, Mr. Hill reassigned Ms. Evans to Regions Prichard and Mr. Nichols to Regions Mobile. (Hill Depo. at pp. 32:10-38:17).

11. Mr. Hill warned Ms. Evans if he received any more complaints she would be terminated. (Hill Depo. at pp. 32:10-38:17).

12. Ms. Evans did not want to be reassigned to Regions Prichard and was upset about the transfer. (Nichols Depo. at pp. 270:10-14; Hill Depo. at p. 38:11-17).

13. At the time Mr. Hill reassigned Mr. Nichols to Regions Mobile, Marie Philon ("Ms.

Philon")(African-American female) was the site supervisor. (Hill Depo. at pp. 51:12-52:23).

14. As the site supervisor, Ms. Philon was Mr. Nichols's direct supervisor. (Hill Depo. at pp. 51:12-52:23).

15. If Mr. Nichols needed to miss work, he was required to notify Ms. Philon of his absence. (Deposition of Marie Philon ("Philon Depo."), filed as Exhibit 7, at pp. 49:18-50:2).

16. Ms. Philon reported directly to Mr. Hill and was required to report any personnel issues to Mr. Hill. (Philon Depo. pp. 22:8-13; 30:9-15).

17. Mr. Hill made all decisions regarding disciplinary actions to be taken against any employee supervised by Ms. Philon. (Philon Depo. at pp. 30:9-15; 43:7-19).20, 2007. (Nichols Performance Monitoring Report, filed as Exhibit 8).

18. On or about June 19, 2007, Ms. Philon reported to Mr. Hill that Mr. Nichols failed to come to work and failed to notify her beforehand. (See Hill Depo. at pp. 58:21-61:5; see also Nichols Performance Monitoring Report (PMR), filed as Exhibit 8; see also Philon's written statement, filed as Exhibit 9).[3]

19. Ms. Philon told Mr. Hill that Patricia Moore ("Ms. Moore")(white female) called and informed her Mr. Nichols failed to come to work and relieve her from duty. (See Hill Depo. at pp. 65:20-66:2; Philon Depo. at pp. 26:14-28:5; Philon's written statement; Moore's written statement, filed as Exhibit 10; Philon's Daily Officer Activity Report, filed as Exhibit 11).

---

[3] In her written statement, Ms. Philon explains that Ms. Moore was on duty on the morning of June 19, 2007, and called to report that Mr. Nichols had not arrived to relieve her and had not called.  Ms. Philon then relieved Ms. Moore at 9:30 a.m. and worked until 10:00 p.m. that night.  Ms. Philon states that she did not hear from Mr. Nichols that day but that he called on "Wednesday night about 6:30" to report that "he was sick and would be back".  Ms. Philon stated that she told Nichols to "call Mr. Hill before he comes back to work." (doc. 39-10).

20. Mr. Hill told Ms. Philon to instruct Mr. Nichols to see him before Mr. Nichols reported back to work. (See Hill Depo. at pp. 58:21-61:5; Philon's written statement).

21. Ms. Philon provided Mr. Hill with a proposed PMR and a written statement regarding Mr. Nichols's June 19 and 20, 2007 absences. (Philon Depo. at p. 44:15-18).

22. On June 27, 2007, Mr. Hill met with Mr. Nichols and informed him he received employee reports that Mr. Nichols failed to come work on June 19 and 20, 2007. (Hill Depo. at pp. 62:22-65:9; Nichols Depo. at pp. 199:10-212:20; Nichols Performance Monitoring Report).

23. Mr. Hill presented Mr. Nichols with the PMR for his failure to report for work and to properly call off and informed him he was being terminated for these violations. (Nichols Depo. at pp. 199:10-212:20).

24.[4]  Mr. Nichols testified that he was at work on June 19, 2007, and that he called Ms. Philon at 6:30 p.m that evening to tell her that he would not be at work on June 20, 2007, because he was ill (Nichols Depo. at pp. 140-141).  He testified that he spoke with Ms. Philon again on June 20, 2007 and told her that he would not return to work until June 25, 2007 because he was ill and that he would have a doctor's excuse  (Nichols Depo. at pp. 208-209).

25.  Mr. Nichols obtained a copy of the security camera tapes from Regions Mobile which show that he reported for work on June 19, 2007  (Doc. 42, Exhibit 5, Affidavit of Robert S. Scherr, Vice President, Regions Bank).

26. Mr. Nichols perceived the security officer position at Regions Mobile was less desirable because the position at Regions Prichard was Prichard was closer to Mr. Nichols'

---

[4] The facts identified in paragraphs 24 through 46 are adapted from defendant's statement of undisputed facts (doc. 38) and have not been disputed by plaintiff.

5

home, Mr. Nichols had to pay for parking or park five to six blocks away, and he did not receive as much overtime (Nichols Depo. at pp.120, 253-254).

27.  Mr. Nichols believed that Ms. Evans would receive more overtime than he and that she received a raise to a higher pay rate than his pay rate (Nichols Depo. at pp. 270-271)

28. Mr. Nichols complained to Mr. Hill and Mim Goyne in Human Resources with SEI that the transfer was unfair to him and told Goyne that "female officers could screw up and just be moved to another bank making more money and I had to pay the price . . ." (Nichols Depo. at pp. 125-126, 137; 253-254).

29.  Mr. Nichols testified that at the time he was terminated on June 28, 2007, he was paid $8.25 per hour (Nichols Depo. at pp. 237:12-239:8).

30.  Mr. Hill testified that at the time Mr. Nichols was transferred, the security guards at Regions Prichard and Regions Mobile were paid the same hourly rate, $8.25 per hour, and worked the same amount of hours per week. (Hill Depo. at p. 40:6-9).

31.  Mr. Hill testified that all of the SEI security guards received a pay increase at the same time. (Hill Depo. at p. 40:6-9).

32.  The pay increase to $9.00 per hour for the Prichard Regions security guards went into effect on July 22, 2007, after Mr. Nichols was terminated on June 28, 2007 (doc. 42-6, Plaintiffs Exhibit 5, Evans' Personnel Status Change Form ("Prichard rate for branch is now $9.00 an hour").

33. Mr. Nichols was given a copy of the SEI employee handbook (Nichols Depo. at p. 114:7-115:23; Acknowledgment at Exhibit 4)  SEI's handbook contains a policy prohibiting discrimination:

> Security Engineers, Inc. is an equal opportunity employer. Security Engineers,
> Inc. does not  allow and will not tolerate any discrimination based on race,
> gender, age, sex, national origin, religion, disability or any other protected basis
> in hiring, promoting, compensation, benefits, retention, termination or any other
> employment activity.

(Nichols Depo. at p. 114:7-115:23; SEI Employee Handbook at p. 4, filed as Exhibit 5).

34. SEI's handbook also contains its policies regarding attendance and calling off from

work. (SEI Employee Handbook at pp. 7, 21-24)

35. In a non-emergency situation, security officers are required to personally "call off"

from work at least two hours prior to the beginning of their scheduled work time, and in an

emergency situation, security officers are required to "call off" as soon as possible. (SEI

Employee Handbook at p. 7).

36. SEI's handbook provides that certain conduct constitutes "major violations" of its

disciplinary policy, including failing to properly call off from work, unexcused absences, and

refusing to sign official Security Engineers, Inc. documents, including, but not limited to

Performance Monitoring Reports ("PMR"). (SEI Employee Handbook at p. 22-23).

37. SEI's disciplinary policy also provides for "intolerable violations." (SEI Employee

Handbook at pp. 23-24).  "Intolerable violations" include "failure to report for duty" and

"abandoning post." (Id.).  "Intolerable violations" warrant "immediate termination of

employment." (Id.).

38. SEI's handbook explains SEI has the right to re-assign employees at will:

> Employee work assignments (including, but not limited to, work
> location, days worked, days off and work times) are at the will of
> Security Engineers, Inc., and are made only in consideration of the
> business needs of Security Engineers, Inc. Any accommodations of
> an employee's personal desires concerning their work assignment
> is purely coincidental with Security Engineers, Inc.'s business

7

needs. Security Engineers, Inc.'s assignment of an employee to a particular work assignment is not a promise, guarantee or pledge of future work at that assignment of future work assignment(s). The clients of Security Engineers, Inc. are afforded by agreement the right to approve or disapprove the assignment of any Security Engineers, Inc. employee to their site (Security Engineers, Inc. will abide by their client's decisions regarding Security Engineers, Inc. employees assigned at the client's site).

(SEI Employee Handbook at p. 4).

39. Mr. Hill never made any racially discriminatory remarks to Mr. Nichols. (Nichols Depo. pp. 232:21-233:11).

40. Mr. Nichols never heard any SEI employee make any derogatory remarks about white people. (Nichols Depo. at pp. 232:21-233:11).

41. Mr. Hill never made any remarks to Mr. Nichols that indicated Mr. Hill had a preference for female employees or negative attitude toward male employees. (Nichols Depo. pp. 232:21-233:11).

42. Mr. Nichols has no personal knowledge whom, if anyone, SEI hired to replace him. (Nichols Depo. at pp. 235:21:236:9).

43. Mr. Nichols does not know of any African-American security officer who failed to come to work without calling off. (Nichols Depo. pp. 278:17-279:2).

44. Mr. Nichols does not know of any female employee who failed to come to work without calling off. (Nichols Depo. pp. 278:17-279:2).

45. When Mr. Hill was the operations manager in Mobile, he terminated the following African-American and female employees for failure to report to work: Katina Adams (African-American female), Heather Houston (white female), Angela Jackson (African-American female), Wendy Jackson (African-American female), and Sandra Tandy

8

(African-American female). (Affidavit of Charlie Hill ("Hill Aff.") at ¶ 6, filed as Exhibit 13;

Hill Depo. at pp. 81:19-82:20). Mr. Hill also terminated Jennifer Orso, a female Native

American, for failing to report for work. (Hill Aff. at ¶ 6).

46.  In the Equal Opportunity Employment Charge of Discrimination, Mr. Nichols stated

as follows:

> Mr. Charlie Hill, Black, Operations Manager, informed me I was discharged for
> failing to report for duty, unexcused absences, and job abandonment after I
> allegedly failed to call or show for work.  I did not commit the infractions I was
> discharged for.  I reported to work on June 19, 2007 and worked my entire shift.  I
> called after my shift on June 19, 2007 and spoke with Ms. Marie Philon, Black,
> Captain, I would not be at work on either June 20 or June 21, 2007 due to illness.
> Although I informed Captain Philon on June 19, 2007 of my non-availability for
> duty on June 20 and June 21, I still called each day to inform Captain Philon that I
> wasn't able to report to work but would return to work as scheduled on June 25,
> 2007.  I was available to report to work on June 25, 2007, however, Mr. Hill
> informed me not to report but meet with him at 11:00 a.m.  Mr. Hill was
> unavailable and informed me to meet him on June 28, 2007, at which time I was
> discharged.
>
> I am aware of a Black, female coworker, who Respondent's client asked to be
> removed from her post for interfering with daily operations  by using her cell
> phone and talking to employees, however, she was not discharged as I was.
>
> I believe I was discriminated against because of my race, Caucasian and my sex,
> male, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(doc. 44-2).

## II. Summary judgment standard

Summary judgment should be granted only "if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c).[5]  A factual dispute is "'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986); see also Information Systems and Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1224 (11th Cir. 2002).  A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." Id.; accord Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1993), cert. denied, 507 U.S. 911, 113 S.Ct. 1259 (1993).  Moreover, "what is considered to be 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes." Cottrell v. Caldwell, 85 F.3d 1480, 1486 (11th Cir. 1996).

The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The party seeking summary judgment always bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).

---

[5]   Rule 56(c) of the Federal Rules of Civil Procedure, provides that summary judgment shall be granted:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

Once the moving party has satisfied its responsibility, the burden then shifts to the nonmovant to show the existence of a genuine issue of material fact. Id. The non-movant bears "the burden of coming forward with sufficient evidence on each element that must be proved." Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). If "a party...fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," Rule 56(c) mandates that summary judgment be entered against that party. Celotex, 477 U.S. at 322, 106 S.Ct. at 2552. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 999 (11th Cir. 1992) cert. denied, 507 U.S. 911, 113 S.Ct. 1259 (1993) (internal citations and quotations omitted). However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Secretary of Dept. of Children and Family Services, 358 F.3d 804, 809 (11th Cir. 2004), cert. denied, 543 U.S.1081,125 S.Ct. 869 (2005).

Additionally, the Eleventh Circuit has rejected the contention that summary judgment should seldom be used in employment discrimination cases because such cases "involve examination of motivation and intent". Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004) (quoting Chapman v. AI Transport, 229 F. 3d 1012,1026 (11th Cir. 2000) (en banc)). Rather, "the summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale." Id.

III. Applicable law

Mr. Nichols, a white male, alleges that he was terminated on basis of his race and sex. Title VII prohibits intentional acts of employment discrimination, including termination or discharge of an employee, on basis of race, color, religion, sex, and national origin.  42 U.S.C. § 2000e-2(a)(1) (disparate treatment)[.]"  Ricci v. DeStefano, 129 S. Ct. 2658, 2661 (2009).  The parties do not dispute that there is no direct evidence of discrimination against Mr. Nichols. Because Mr. Nichols' claims are based upon circumstantial evidence, the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973), applies and Mr. Nichols must establish his prima facie case of discrimination.  Wilson v. Bailey, 934 F.2d 301, 304 (11th Cir.1991).  Under the McDonnell-Douglas framework, the "prima facie case of discrimination, [] creates a rebuttable presumption that the employer acted illegally."  Wilson v. B/E Aerospace, Inc., 376 F.3d at 1087.  In a disparate treatment action, Mr. Nichols must show that  (1) he belonged to a protected class, (2) was subject to an adverse employment action, (3) that the action taken was in contrast to actions taken regarding similarly situated employees outside his protected class, and (4) that he was qualified to do the job. Wilson v. B/E Aerospace, Inc., 376 F.3d at 1091; see also Shealy v. City of Albany, 89 F.3d 804, 805 (11th Cir. 1996) (A reverse discrimination plaintiff must prove: "[(]1) that he belongs to a class; (2) that he applied for and was qualified for a job; (3) that he was rejected for the job; and (4) that the job was filled by a minority group member or a woman.") (citations omitted).

If Mr. Nichols establishes his prima facie case, SEI "then bears the burden to show a legitimate and non-discriminatory reason for the employment action. If this burden is met, then the presumption is rebutted and the burden shifts back to [Mr. Nichols] to show the proffered

reason was a pretext for discrimination." <u>Carter v. Bowman</u>, 2006 WL 531294 (11th Cir. 2006).

In order to survive summary judgment, Mr. Nichols must "come forward with evidence,

including the previously produced evidence establishing a prima facie case, sufficient to permit a

reasonable fact finder to conclude that the reasons given by the employer were not the real

reasons for the adverse employment decision." <u>Combs v. Plantation Patterns</u>, 106 F.3d

1519,1528 (11th Cir. 1997).  "To show that the employer's reasons were pretextual, the plaintiff

must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or

contradictions in the employer's proffered legitimate reasons for its action that a reasonable

factfinder could find them unworthy of credence.'" <u>Cooper v. Southern Co.</u>, 390 F.3d 695, 726

(11th Cir. 2004) (quoting <u>Combs</u>, 106 F.3d at 1538).  However, the ultimate burden of proving

actual, intentional discrimination remains with Mr. Nichols.  <u>See</u> <u>Texas Department of</u>

<u>Community Affairs v. Burdine</u>, 450 U.S. 248, 101 S.Ct. 1089 (1981).

IV.  <u>Analysis</u>

On summary judgment, the Court looks first to whether Mr. Nichols has established his

prima facie case.  In that regard, SEI concedes that Mr. Nichols is a member of a protected class,

was qualified for the position (for purposes of this summary judgment motion only) and received

an adverse employment action, <u>i.e.</u>, he was fired.  SEI argues that Mr. Nichols failed to present

substantial evidence that he was replaced by a person outside his protected class or was treated

less favorably than a similarly situated individual outside his protected class, and therefore,

cannot establish his prima facie case of race and sex discrimination.

A.  <u>Replacement by someone outside Mr. Nichols' protected class</u>

SEI argues that there is no evidence that Mr. Nichols was replaced by a black or a female

13

after he was terminated.  Mr. Nichols does not dispute this argument in his response.  The Court

has reviewed the evidence in support of the motion and response and concludes that Mr. Nichols

presents no evidence to establish that he was replaced by a black or a female security officer

after he was terminated from employment with SEI.

   B. Less favorable treatment than a similarly situated employee

   1. Termination

   SEI argues that Mr. Nichols cannot identify a similarly situated security officer outside

his protected class who was involved in or accused of the same or similar conduct, i.e, a proper

comparator, who was not terminated.  SEI argues that Mr. Nichols admitted in his deposition that

he could not identify any black or female employee who was not terminated after failing to

report to work for two consecutive days without notifying his or her supervisor.  (doc. 39-2,

Nichols Depo. at pp. 278:17 - 279:2).  SEI argues that Ms. Evans is not a proper comparator

because her conduct of talking on a cell phone at work is not conduct "nearly identical" to that

alleged as to Mr. Nichols.[6]  SEI also argues that there is no evidence that Ms. Evans failed to

report to work for two consecutive days without calling to notify her supervisor.  Also, SEI

_____

   [6] SEI points out that at deposition Mr. Nichols stated that another black female employee
engaged in misconduct and was not fired.  SEI asserts that this testimony is hearsay and cannot
be used to overcome summary judgment.  Mr. Nichols testified that Ms. Blevins and Ms. Moore
(who is white) told him that Ms. Blevins failed to secure return of a bank key from a cleaning
lady but was not terminated (doc. 39-2, Nichols Depo. at pp. 254:7-261:20).  SEI also points out
that Mr. Nichols did not include Blevins as a comparator in his Equal Employment Opportunity
Charge.  In his response to the motion for summary judgment, Mr. Nichols points out that
Blevins told him that he was being terminated because he was white (doc. 39-2, Nichols Depo. at
pp. 228) and argues that he can rebut Ms. Blevins', Mr. Hill's, Ms. Philon's and Ms. Moore's
statements that he did not show up for work on June 19, 2007, with proof by way of the security
video tape.  However, Mr. Nichols does not rebut SEI's argument that Blevins is not a proper
comparator.  The Court has reviewed the evidence presented in regard to Blevins' conduct and
finds that evidence of her conduct, if proven, was not "nearly identical" to that of Mr. Nichols.

proffered evidence that when Mr. Hill received a second complaint regarding Ms. Evans' phone use at work, her employment was terminated.  SEI also proffered evidence that since Mr. Hill has been the operations manager for SEI in Mobile, he has terminated five black female employees and one female Native American employee for the same conduct as Mr. Nichols.

Mr. Nichols does not dispute that he and Ms. Evans were both employed as security officers for SEI, and thus in this respect, they are similarly situated.  Mr. Nichols argues that as evidence of SEI's disparate treatment, when Ms. Evans violated company policy by talking on a cell phone, she was transferred to a better position, but when Mr. Nichols allegedly failed to call in to report an absence, a "no call" - "no show",[7] he was fired.  Mr. Nichols offers no evidence or argument that his alleged conduct was "nearly identical" to that of Ms. Evans, such that she is a proper comparator.

The Eleventh Circuit Court of Appeals has explained that the "plaintiff and the employee she identifies as a comparator must be similarly situated 'in all relevant respects.'" Wilson v. B/E Aerospace, Inc., 376 F.3d at 1091 (citations omitted).  Thus, to meet the "similarly situated" requirement, Mr. Nichols must show that he and Ms. Evans "engaged in 'nearly identical' conduct but were disciplined in different ways." Daniel v. Spectrum Stores, Inc., 381 F.Supp.2d 1368, 1376 (M.D. Ga. 2005) (citing Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1186 (11th Cir.1984)).  In that regard, the Court looks to whether

. . . the employees are involved in or accused of the same or similar conduct and

---

[7] Mr. Nichols argues that he was at work on June 19, 2007 and called his supervisor Ms. Philon that evening to tell her that he would not be in June 20-25, 2007.  Mr. Nichols has provided evidence by way of a video tape from Regions Bank's security cameras to establish that he was at work on June 19, 2007, to rebut Ms. Philon's, Ms. Moore's and Mr. Hill's testimony that Mr. Nichols was a "no call - no show" on that date.

> are disciplined in different ways. The most important factors in the disciplinary
> context are the nature of the offenses committed and the nature of the
> punishments imposed. We require that the quantity and quality of the
> comparator's misconduct be nearly identical to prevent courts from
> second-guessing employers' reasonable decisions and confusing apples with
> oranges.

Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir.1999) (internal quotations and citations

omitted); Hawkins v. Potter, 316 Fed. Appx. 957, 960 (11th Cir. 2009).

Moreover, Mr. Nichols has the "burden to prove that a similarly situated person received

better or more favorable treatment. In applying this standard, an allegation of a similarly-situated

comparator, without an adequate showing that the plaintiff is similarly situated, fails to establish

a prima facie case of employment discrimination." Adkison v. Sikorsky Aircraft Corp.,  2009

WL 1251539, 5 (M.D. Ala. 2009) (citations omitted).

Mr. Nichols can establish that he and Ms. Evans were both security officers, but this is

where the similarity ends.  The Court does not find that talking on a cell phone at work and

failing to report for work without calling to report the forthcoming absence, constitute "nearly

identical" conduct.  Although the "methods of presenting a prima facie case are not fixed" and

are "flexible and depend[ant] to a large degree upon the employment situation," Wilson v. B/E

Aerospace, Inc., 376 F. 3d at 1087, the Court does not find enough flex in this employment

situation to conclude that Ms. Evans' conduct was nearly identical to that of Mr. Nichols.  See

Daniel, 381 F. Supp. 2d at 1376 (finding plaintiff failed to make his prima facie case on evidence

that his comparator objected to a scheduled shift but was not fired, when plaintiff missed a

scheduled shift and was fired)  Therefore, the Court finds that Mr. Nichols has failed to come

forward with sufficient evidence to establish his prima facie case of race and sex discrimination

in regard to his termination.[8]

2. Transfer to Regions Mobile

In his response, Mr. Nichols asserts that he was discriminated against on basis of race and sex when Mr. Hill transferred him to Ms. Evans' less desirable position while moving her to Mr. Nichols' more desirable position and later giving her a raise. Mr. Nichols argues that at the time of the transfer, he had not violated any company policy and was a good employee but Ms. Evans had violated company policy regarding cell phone use at work. Mr. Nichols argues that SEI failed to present any evidence to rebut the fact that Ms. Evans is a valid comparator in regard to the discriminatory transfer. Mr. Nichols concludes that on motion for summary judgment, SEI "did not even attempt to explain its reasoning for giving the black female employee who was being transferred due to complaints, a better paying, more desirable position while moving a "good employee" who was a white male to a less desirable position."

SEI replies that Mr. Nichols cannot pursue any claims arising from his transfer because he failed to exhaust his administrative remedies and that Mr. Nichols' claims are limited to the scope of the EEOC investigation and to those claims which could reasonably be expected to grow out of the EEOC charge. SEI points out that in the EEOC charge, Mr. Nichols charged only that his termination was based on race and sex discrimination and argues that a claim for discriminatory transfer cannot be reasonably expected to have grown from Mr. Nichols' EEOC

_____

[8] In his brief Mr. Nichols relies heavily on the evidence that he was terminated based on a false report, i.e. that he was absent on June 19, 2007. While this evidence would be relevant to whether SEI's reason for termination was pretextual, ("Pretext means more than an inconsistency or a mistake, pretext is "a lie, specifically a phony reason for some action." Silvera v. Orange County School Bd., 244 F.3d 1253, 1261 (11th Cir.2001)), it is not relevant to the initial inquiry of whether Mr. Nichols has established a prima facie case of discrimination.

charge.

SEI also argues that the transfer does not constitute an adverse employment action necessary to establish a prima facie case, because the transfer was not objectively equivalent to a demotion.  SEI also argues that paying for parking and driving farther to work.  SEI points out that even though Mr. Nichols may have been precluded from overtime at Regions Mobile, the undisputed evidence shows that SEI, through Mr. Hill, changed its policy regarding overtime at Regions Prichard and stopped allowing overtime hours.  SEI also asserts that the hourly rate at both jobs was the same and that raises for the security guards were not made until July 2007 after Mr. Nichols was terminated in June 2007.

SEI correctly argues that in the EEOC charge, Mr. Nichols did not identify the transfer from Prichard Regions to Mobile Regions as an act of race and sex discrimination.  In the charge, Mr. Nichols states that he was discharged on basis of race and sex discrimination and that he was aware of conduct of a black, female coworker which did not result in a discharge.  But, he does not mention the swapping of his position with that of Ms. Evans resulting in a discriminatory transfer.

"The filing of an administrative complaint with the EEOC is ordinarily a jurisdictional prerequisite to a Title VII action.[] A Title VII action, however, may be based 'not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination.' []" Chanda v. Engelhard/ICC, 234 F.3d 1219, 1225 (11th Cir. 2000) (quoting Fine v. GAF Chemical Corp., 995 F. 2d 576, 578 (5th Cir. 1993)(footnotes omitted).  "EEOC

regulations provide that charges should contain, among other things, '[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices.'" Alexander v. Fulton County, Georgia, 207 F.3d 1303, 1332 (11th Cir.2000) (citing 29 C.F.R. § 1601.12(a)(3)).  The Eleventh Circuit has explained that the "the purpose of this exhaustion requirement 'is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'" Lambert v. Alabama Dept. of Youth Services, 150 Fed. Appx. 990, 993 (11th Cir. 2005) quoting Gregory v. Georgia Dep't of Human Resources, 355 F.3d 1277, 1279 (11th Cir.2004) (citation omitted).  "[J]udicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint, but [have] cautioned that allegations of new acts of discrimination are inappropriate." Id. at 993 (citation omitted).

Therefore, the Court must consider whether Mr. Nichols' claim of discriminatory transfer on basis of race or sex could reasonably be expected to grow out of the initial charges of race and sex discrimination.  Mr. Nichols' EEOC charge does not mention the transfer.  The charge explains that Mr. Nichols was terminated on June 28, 2007, for an alleged violation of company policy, but Ms. Evans violated company policy but was not discharged.  Mr. Nichols checked the boxes for race and sex discrimination.  The transfer involved the same type of alleged discrimination (race and sex), the same actors as the termination - Mr. Nichols, Mr. Hill, and Ms. Evans, and preceded the termination only by a couple of months.  Thus, the discriminatory transfer was a "kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial

charges of discrimination'". <u>Chanda</u>, 234 F.3d at 1225. <u>Cf</u>. <u>Hillemann v. Univ. of Central</u>

<u>Florida</u>, 167 Fed. Appx. 747, 749-50 (11th Cir. 2006) (finding race and gender claims could not

reasonably be expected to grow out of investigation of age discrimination claims); <u>Sessom v.</u>

<u>Wellstar Hospital</u>, 2009 WL 1562876 (N.D. Ga. 2009) (slip op.) (finding plaintiff failed to

exhaust her administrative remedies because her EEOC Charge was limited to discrimination on

basis of sex and retaliation but did not refer to disability discrimination).

However, Mr. Nichols has failed to make his prima facie case of race or sex

discrimination in regard to the transfer because he failed to present evidence to establish that he

was subject to a materially adverse employment action.  Transfers are materially adverse when

they are the <u>objective</u> equivalent of a demotion.  The Eleventh Circuit has explained that a

"transfer to a less desirable position in terms of pay or eligibility for pay increases is an adverse

employment action because it is equivalent to a demotion." <u>Akins v. Fulton County, Ga.,</u>  420

F.3d 1293, 1301 (11th Cir. 2005).  The evidence establishes that at the time of the transfer, Ms.

Evans and Mr. Nichols received the same pay rate, $8.25 per hour.  The evidence also

establishes that all security guards at all branches received a pay increase at the same time and

that employees at Prichard Regions received a increase in pay July 25, 2007.

Mr. Nichols also argues that the transfer to Mobile Regions precluded his opportunity for

overtime pay equal to that he received while at Prichard Regions. Mr. Nichols relies upon the

testimony of Mr. Hill. (doc. 42-3, p. 35)  Mr. Hill testified that the security officers at Regions

Mobile would work forty hour per weeks with some opportunity for overtime but the security

officers at the Prichard Regions would routinely receive approximately 48 hours per week (doc.

42-3, p. 35-37).  However, Mr. Hill also testified that in March or April of 2007, at about the

same time that Ms. Evans was transferred, he "changed that scheduling where they only got the forty hours instead of overtime." (doc. 42-3 at p. 37-38).  Mr. Hill testified that he "had somebody else go in there and work that branch on Fridays. So that was only basically forty hours a week being made". Id.  Therefore, in terms of pay or eligibility, viewing the transfer objectively, it was not the equivalent of a demotion.

Also, for the transfer to be materially adverse, it must be "objectively serious and tangible enough to alter" Mr. Nichols' "compensation, terms, conditions or privileges of employment" or "deprive [him] of employment opportunities or adversely effect . . . [his] status as an employee." Id. (citations omitted).  Mr. Nichols testified that the position at Prichard Regions was closer to his home and that at the Regions Mobile he had to pay for parking or would have to park five to six blocks away. (doc. 42-5 at p. 120, 253-254).  Despite his opinion that the transfer was to a less desirable position, these two facts are not objectively serious enough to alter the "compensation, terms, conditions or privileges of employment or deprive Mr. Nichols of employment opportunities or adversely effect his status.

D. Pretext

The Court has determined that Mr. Nichols failed to make a prima facie case of disparate treatment on basis of race or sex and thus failed to create the presumption that discrimination was the motive behind SEI's actions. Wilson, 376 F.3d 1079, 1087 (11th Cir. 2004) (establishing a "prima facie case of discrimination, []creates a rebuttable presumption that the employer acted illegally.").  Therefore, the Court need not address whether SEI met its burden to articulate a legitimate, non-discriminatory reason for terminating Mr. Nichols and need not address whether Mr. Nichols submitted substantial evidence to create a genuine issue of material fact that SEI's

reasons were a pretext for race or sex discrimination.

     E.  <u>Damages</u>

     Because the Court has granted summary judgment in favor of defendant, it need not

address SEI's argument regarding damages.

V.  <u>Conclusion</u>

     For the reasons set forth herein, SEI's motion for summary judgment is **GRANTED**.

     **DONE** and **ORDERED** this 6th day of November, 2009**.**

               <u>**s / Kristi K DuBose**</u>
               **KRISTI K. DuBOSE**
               **UNITED STATES DISTRICT JUDGE**